**ANDERSON KILL & OLICK, P.C.**
Todd E. Duffy. Esq.
Dennis J. Nolan, Esq.
1251 Avenue of the Americas
New York, New York 10020-1182
Tel: (212) 278-1000
Fax: (212) 278-1733
*Proposed Attorneys for the Debtor
 and Debtor-on-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re

                                                    Chapter 11

PETER MATT & CO, INC.                   Case No.:


                                      Debtor.
------------------------------------------------------------x

### DEBTOR'S AFFIDAVIT PURSUANT TO LOCAL RULE 1007-2

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ss: |
| COUNTY OF WESTCHESTER | ) |

MICHAEL HOGAN, being duly sworn, deposes and says:

1.     I am the Chief Financial Officer of Peter Matt & Co., Inc. (the "Debtor" or "Peter Matt") and am fully familiar with the facts set forth herein.

2.     On September 1, 2009, the Debtor filed a voluntary petition under chapter 11 of the United States Bankruptcy Code.

<u>Nature of Peter Matt's Business (LBR 1007(a)(1))</u>

3.     The Debtor is a New York corporation with its principal place of business at 4 Macdonald Avenue, Suite 3a, Armonk, New York 10504 (the "Premises"). Peter

Matt is a wholesaler/importer wine distributing and marketing company dedicated to building and promoting smaller wine brands. In January 2004, Peter Matt was approached by Monarchia International, Inc. ("Monarchia"), a Hungarian-based winery with several niche products, to consider a strategic alliance. In April 2004, Monarchia acquired a 40% interest in Peter Matt, along with an operational control agreement, in an effort to secure a permanent distribution base in the United States.

Circumstances Leading to Filing Chapter 11 (LBR 1007(a)(1))

4. In December 2004, Peter Matt entered into a factoring and inventory financing relationship with Capstone Business Credit, LLC ("Capstone"), as prior equity contributions and cash infusions proved insufficient to fund Monarchia's rapid expansion plans.

5. By September 2007, Peter Matt had grown to nearly $12 million in annual revenue. Monarchia saw Peter Matt as a vital platform for further expansion and, therefore, acquired the remaining 60% stake in the Debtor for $3.41 million. Monarchia paid $700,000 of the purchase price in cash, with the remainder financed with notes.

6. In December 2007, Peter Matt and Monarchia signed a letter of intent to refinance the Capstone debt, approximately $15.5 million at the time, with $9.65 million of new equity and $6.5 million of subordinated debt, in conjunction with a yet to be secured commercial credit line.

7. By August 2008, Peter Matt's debt to Capstone had grown to $19.5 million, approximately $6.5 million of which represented interest accured at rates varying from 18% to 30%. The Debtor finally secured a lender, First Capital Corporation ("FCC"). At closing, Peter Matt was left with an outstanding loan balance to FCC of

$5.16 million to retire the old Capstone debt in full and an overall debt burden that could only be serviced if Peter Matt continued to grow according to late 2007/early 2008 projections. The remaining Capstone debt was retired with the $9.65 million equity and $6.5 million subordinated debt infusion (with $1.4 million of subordinated debt held back at closing for future funding.) Only $1 million of excess availability remained on the FCC credit line at closing, an amount insufficient to "catch up" supplier payments which had started to fall in arrears during the eight months it took for the deal contemplated in December of 2007 to close.

8. In the fall 2008, Peter Matt's holiday season fell considerably behind projections, although sales continued at the pace of late 2007. During that time, the loan balance to FCC peaked at $6.25 million. However, availability of funds was below the level needed to execute the company's further expansion plans, and vendor payments fell further behind. The Debtor instituted a structured payment plan program for all core vendors. Unfortunately, the Debtor had to depart from this program when, on December 8, 2008, FCC unilaterally reduced the loan availability on inventory from 60% to 50%. This resulted in a $660,000 over advance position, on $5.78 million outstanding to FCC, thereby leaving Peter Matt unable to borrow on its commercial line. Capstone, through subordinated debt, stepped in on a weekly basis to fund operations, but with only *de minimis* contributions to vendor payables. The total subordinated debt contribution from December 8, 2008 through the end of February 2009 was $726,000.

9. FCC resumed funding in February 2009, but with 50% inventory availability. Numerous vendors ceased shipping to Peter Matt on open terms. By July 2009, FCC's loan balance had declined from $6.2 million in December 2008 to $3.35

million in July, severely impacting cash flow to a point of near paralysis, resulting in the Debtor's virtual inability to purchase fresh inventory. Meanwhile, inventory declined from a peak of $9.45 million in August of 2008 to $5.9 million in July. Nearly 30% of the Debtor's core items were out of stock and several vendors commenced collection actions. Sales dropped approximately 25% versus 2008, with severely eroded gross profit margins, largely due to the Debtor's inability to "bundle" less desirable goods with fresh, exciting inventory.

10. Protracted negotiations with FCC to restore 60% inventory availability in order to purchase "fresh" goods failed. In early August 2009, FCC offered a 55% inventory availability scenario, but only if Capstone contributed another $250,000 in subordinated debt that would not get repaid until inventory availability is once again reduced to 50% in December of 2009; however, negotiations stalled.

11. As a result, only three vendors (out of approximately sixty) are still shipping to the Debtor on open terms and nearly 40% of all key items are out of stock. The Debtor has not made any significant vendor payments, other than token payments on old debt, COD or partial COD payments on the small amounts of goods received, in nearly five months.

### Chapter 7 or Chapter 13 Trustee or Committee

12. This chapter 11 case was not originally commenced under chapter 7 or chapter 13.

### Pre-Petition Committees (LBR 1007(a)(3))

13. No committees were organized prior to the entry of the order for relief in this chapter 11 case.

### Debtor's 20 Largest Unsecured Claims (LBR 1007(a)(4))

14. A list of the holders of the twenty largest unsecured claims, excluding insiders, was filed simultaneously herewith and is attached hereto as Exhibit A. Such creditors consist primarily of trade debt.

### Debtor's Secured Claims (LBR 1007(a)(5))

15. A list of the holders of the Debtor's secured claims is annexed hereto as Exhibit B.

### Debtor's Assets and Liabilities (LBR 1007(a)(6))

16. A summary of the Debtor's assets and liabilities is set forth on the summary of schedules annexed to the bankruptcy petition filed simultaneously herewith.

### Debtor's Shares or Securities that are Publicly Held (LBR 1007(a)(7))

17. The Debtor has no shares of stock, debentures or other securities that are publicly held.

### Debtor's Property in Possession or Custody of Another (LBR 1007(a)(8))

18. The Debtor has no property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

### Debtor's Leased Premises (LBR 1007(a)(9))

19. The Debtor leases the Premises from 4 MacDonald LLC at a rate of $5,028.30 per month. The lease expires on February 28, 2012.

### Location of the Debtor's Substantial Assets (LBR 1007(a)(10))

20. The Debtor's substantial assets, consisting of its inventory, are located at Fond du Lac Cold Storage in Edison, New Jersey. Its books and records, are located at

the Premises. The Debtor holds no assets outside the territorial limits of the United States.

Nature and Status of Any Action or Proceeding Against the Debtor (LBR 1007(a)(11))

21. All suits and proceedings in which the Debtor is named as a party are listed in the Debtor's Statement of Financial Affairs filed simultaneously herewith.

Debtor's Management (LBR 1007(a)(12))

22. Management – The Debtor has been led by its CEO and Vice-President, Joern Tittel, and Michael Hogan, its Chief Financial Officer. The Debtor's Board of Directors include: Nimrod Kovacs, Joseph Ingrassia, James Rybakoff, Joern Tittel, and John Rice (Chairman).

Additional Information (LBR 1007(b))

23. The Debtor pays its employees twice a month. It estimates that its semi-monthly payroll obligations are $67,000.

24. A copy of the Debtor's most recent operating budget, including anticipated sales, is annexed hereto as Exhibit C.

/s/ Michael O. Hogan as CFO
Michael O. Hogan
Chief Financial Officer
Peter Matt & Co., Inc.

Sworn to before me this
1st day of September, 2009

/s/ Sharon Tomback
Notary Public
SHARON TOMBACK
Notary Public, State of New York
No. 01TO6150391
Qualified in Westchester County
Commission Expires July 24, 2010