DIANA G. ADAMS
United States Trustee for Region 2
33 Whitehall Street, 21st Floor
New York, New York 10004
Telephone: (212) 510–0500
By: Elisabetta G. Gasparini
Trial Attorney

Presentment Date: December 17, 2009
Presentment Time: 12:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
: Case No. 09-23634 (RDD)
In re :
:
PETER MATT & CO., INC., : (Chapter 11)
:
      Debtor. :
:
---------------------------------------------------------x

**RESPONSE TO MOTION FOR AN ORDER AUTHORIZING
THE DEBTOR TO (I) SELL INVENTORY, FREE AND CLEAR OF
ALL LIENS, CLAIMS AND ENCUMBRANCES; AND (II) RETAIN
GREAT AMERICAN GROUP, LLC AS LIQUIDATION CONSULTANT
TO THE DEBTOR, *NUNC PRO TUNC* TO NOVEMBER 20, 2009**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

   Diana G. Adams, the United States Trustee for Region 2 (the "United States Trustee"), hereby respectfully files this response to the Motion for an Order Authorizing the Debtor to (I) Sell Inventory, Free and Clear of All Liens, Claims and Encumbrances; and (ii) Retain Great American Group, LLC ("Great American") As Liquidation Consultant to the Debtor, *Nunc Pro Tunc* to November 20, 2009 (the "Sale and Retention Motion"). See Docket No. 52. In support of this response, the United States Trustee alleges as follows:

## INTRODUCTION

   The Sale and Retention Motion proposes to retain Great American to liquidate the Debtor's case goods and bulk inventory. The sale process proposed in the motion does not contemplate an auction to the highest and best bidder; rather, under the proposed consulting agreement with Great American, the liquidator would have the unfettered right to sell the

-1-

inventory to whoever it chose and to determine, in its own discretion, the pricing and discounting of the assets.

Despite the strict disclosure requirements imposed on professionals whose retention is proposed under section 327 of the Bankruptcy Code, until the United States Trustee made pointed inquiries, Great American failed to disclose in its original affidavit that, through one of its affiliates, it had appraised the Debtor's inventory at the beginning of the case and in connection with the cash collateral motion on behalf of First Capital Corp., LLC ("FCC"), the Debtor's main secured creditors. Great American, through the same affiliate, also has connection with another secured lender, Capstone Business Credit, LLC ("Capstone").

In view of these connections, based on discussions with the Office of the United States Trustee, Great American filed an amended declaration providing disclosures with respect to its representation of FCC in connection with this case and also indicating that neither Great American nor any of its affiliates would perform any work on behalf of FCC or Capstone during the pendency of this case.

Moreover, in view of the connections between Great American, the Debtor, and FCC, and because, under the proposed sale procedures and retention application, Great American would in essence have "carte blanche" to sell the Debtor's inventory to whomever it chose – including its main secured lender – the proposed order approving the Sale and Retention Motion was revised at the request of the Office of the United States Trustee, to provide, among other things, that FCC would not purchase any of the inventory.

Despite having worked out with Debtors' counsel and Great American the issues related to FCC, the United States Trustee still has a concern with respect to the sale of the Debtor's assets where Great American has an almost unilateral ability to sell the Debtor's inventory to whomever it selects. Nothing in the proposed sale procedures prevents an insider of the Debtor – including Capstone -– to buy the property at a discount to then resell at a profit. Accordingly, the United States Trustee requests that the proposed order be further revised to prohibit

Capstone or any other insider from purchasing any of the inventory from Great American, unless alternate procedures are implemented when a sale is contemplated to such entities to ensure that value is maximized for all creditors in the case.

**BACKGROUND**

1. On September 1, 2009 (the "Petition Date"), the Debtor, which is a wholesaler/importer wine distributing and marketing company dedicated to building and promoting smaller wine brands, commenced this Chapter 11 case.

2. The Debtor continues in the possession of its property and management of its business as debtor-in-possession pursuant to Sections 1107 and 1008 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 case.

3. On September 28, 2009, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). See Docket No. 26.

4. In December 2004, the Debtor entered into a factoring and inventory financing relationship with Capstone Business Credit, LLC ("Capstone"). According to the Debtor's schedules, Capstone is the holder of subordinated secured debt in the amount of approximately $6.8 million.

5. Monarchia International, Inc. owns 100% interest in the Debtor. See Docket No. 28.

6. At the 341 hearing, Mr. Michael Hogan, who at that time served as the Debtor's CFO, indicated that Capstone was a majority owner in Monarchia International, Inc. – the Debtor's parent company.

7. FCC and the Debtor entered into a Pre-Petition Loan and Security Agreement on or about August 25, 2008, pursuant to which the Debtor was able to borrow a percentage of the value of inventory.

8. After entry of two interim cash collateral orders, the Debtor entered into a settlement agreement (the "Settlement Agreement") with FCC and Capstone and agreed to a

budget (the "Budget") allowing the use of cash collateral through February 2010. On October 15, 2009, the Court entered the Final Cash Collateral Order, to which was attached a copy of the Budget. See Docket No. 37.

9. The Settlement Agreement and the Final Cash Collateral Order contemplate that the Debtor will conduct an orderly liquidation of its inventory. Through this liquidation process, the Debtor will utilize the proceeds of the sales and collect the outstanding receivables to continue to fund its operations and administrative expenses, and will provide weekly payments to FCC on its secured debt. Ultimately, it is anticipated that the liquidation process will provide for a little over $500,000 to general unsecured creditors.

Sale and Retention Motion

10. On November 23, 2009, the Debtor filed the Sale and Retention Motion seeking the Court's authority to sell inventory and to retain Great American as its liquidation consultant pursuant to a consulting agreement dated as of November 20, 2009 (the "Consulting Agreement").

11. The Sale and Retention Motion proposes to retain Great American to (a) provide full time individuals to supervise and conduct the sale of the inventory, (b) oversee the liquidation and disposal of the Debtor's assets from the Debtor's four facilities, (c) conduct advertising to sell the assets, (d) determine the pricing and discounting of the inventory to be sold, (d) provide the Debtor with reporting and reconciliation of all account information, and (e) provide other services deemed necessary in connection with the liquidation of the Debtor's inventory. See Sale and Retention Motion at Exhibit C (Consulting Agreement) §2.2.

12. Under the Consulting Agreement, Great American would be the sole party authorized to sell the Debtor's assets, and it would have the discretion to sell the assets to whomever it chose and in such lots as it determines in its sole discretion. The only limitation imposed on Great American under the Consulting Agreement is that it is required to provide 48 hours notice to the Debtor and its counsel, FCC, Capstone, the Committee, and the UST Office

of any proposed sale of a lot consisting of more than 2,000 cases with a proposed sale price of less than 40% of cost. Id. at §2.5.

13. The Sale and Retention Motion was accompanied by the declaration of Mark Naugthon, the Vice-President and General Counsel of Great American (the "Naughton Declaration"). The Naughton Declaration disclosed various connections with parties in interest in this case, including the following:

- Great American Appraisal and Valuation, LLC ("GAAV"), an affiliate of Great American, has performed appraisal work on matters unrelated to this chapter 11 case for Captsone Business Credit, LLC, Capstone Liquidators, First Capital Credit Corp., and FCC, LLC, secured creditors of the Debtors.

- GAAV has performed appraisal work related to WB Mason Company, Inc., an unsecured creditor.

- GAAV is a party to a factoring agreement with FCC, LLC pursuant to which FCC factors accounts receivable of GAAV.

- Great American has provided services in matters unrelated to this case on which professionals listed herein, including Grant Thornton, Katten Muchin and Outterbourg Steindler, have been involved.

See Sale and Retention Application at Exhibit G, ¶7.

14. The Sale and Retention Motion provides that "[t]he Debtor has discussed this agreement with counsel to FCC and the Office of the United States Trustee, who have each indicated that they do not intend to objection to the Motion." See Sale and Retention Motion at ¶20.

15. On November 24, 2009, the UST Office sent Debtor's counsel a letter correcting the misunderstanding alleged in the Sale and Retention Motion (the "November 24 Letter"). A true and correct copy of the letter is attached hereto as Exhibit A.

16. During conversations with Debtor's counsel regarding the drafts of the Sale and Retention Motion, the Office of the United States Trustee (the "UST Office") never indicated that the United States Trustee would not be objecting to the Sale and Retention Motion. Id. The comments that were provided to the draft motion were preliminary, and the UST Office made it clear to Debtor's counsel that it would need to see a draft declaration of a representative of Great

American in order to determine whether the United States Trustee would have an issue with conflicts.

17. On December 8, 2009, following inquiries by the United States Trustee Office, Mr. Naugthon filed an amended declaration in support of the Debtor's application for Great American's retention (the "Amended Naugthon Declaration"). See Docket No. 57. The Amended Naughton Declaration discloses, among other things, the following additional connections:

- Great American Appraisal and Valuation, LLC ("GAAV"), an affiliate of Great American in which Great American owns a majority interest, has appraised the inventory of Peter Matt & Co., Inc. on behalf of FCC, secured creditors of the Debtor, both in December 2008 and September 2009.
- GAAV's annual revenues derived from services provided to Capstone, FCC or WB Mason Company have not exceeded one percent of its total annual revenue in 2009.

See Amended Naughton Declaration at ¶7.

18. The Amended Naugthon Declaration also provides that "[i]n connection with and throughout the duration of this case, neither GAAV nor Great American, nor any of their affiliates will perform any work on behalf of Capstone Business Credit, Capstone Liquidators, First Capital Credit Corp., or FCC, LLC related to this Debtor. Id. at ¶9.

19. On December 8, 2009, a revised proposed order for the approval of the Sale and Retention Motion was also filed with the Court (the "Revised Proposed Order"). The Revised Proposed Order provides, among other things, that "FCC shall not purchase any of the inventory and attempt to resell same."

## DISCUSSION

When it first learned about the originally undisclosed connection between Great American's affiliate and FCC – GAAV's prior representation of FCC with respect to an appraisal of the Debtor's collateral in connection with the cash collateral motion – the United States Trustee immediately raised concerns about the obvious conflict of interest. Subsequently, Great American filed the Amended Naughton Declaration which expressly acknowledges that

-6-

neither Great American nor any of its affiliates will perform any work for FCC – or Capstone for that matter – during the pendency of this Chapter 11 proceeding. Moreover, the proposed order was revised to prohibit FCC's ability to purchase the collateral. While the supplemental disclosures and revisions in the order address the United States Trustee's concerns and informal objections raised with respect to FCC's connections, one issue remains.

As set forth above, the Debtor is seeking to retain Great American to liquidate its inventory and, in essence, to run its cash registers. If retained, Great American would have the sole authority and discretion to chose who to sell the inventory to and at what price. As set forth above, the only limitation that would be imposed on Great American is to the extent that a lot consisting of more than 2,000 cases of wine with a proposed sale price of less than 40% is sold, in which case a short notice period would be provided to the main constituencies in this case.

Courts require a debtor to show that a sound business purpose justifies the use, sale or lease of property of the estate outside of the ordinary course of business. In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983). In Lionel, the Court held that "[t]here must be some articulated justification, other than appeasement of major creditors, for using, selling, or leasing property out of the ordinary course of business before the bankruptcy judge may order such disposition under section 363(b)." Id. at 1070. Moreover, it is axiomatic that utilizing a section 363 sale for the sole purpose of liquidating assets for the benefit of the secured creditors is unwarranted and improper. In re Encore Healthcare Assocs., 312 B.R. 52 (Bankr. W.D. Pa. 2004) (applying Lionel standard and finding no business justification as sole purpose of section 363 sale was to liquidate assets for benefit of secured creditors); In re Fremont Battery Co., 73 B.R. 277 (Bankr. W.D. Ohio 1987) (same).

The ability for Great American to sell the Debtor's inventory to either FCC or Capstone not only would create a conflict of interest as a result of Great American's connections with the two entities, but also raises concerns regarding the sale process. The liquidation of the assets proposed in the Sale and Retention Motion does not contemplate a process through which the

inventory will be auctioned off and bidders may come in to bid on the assets, thus ensuring that the value of the assets is maximized. Rather, under the proposed retention, Great American would have "carte blanche" to sell to whomever it selects, at whatever price it chooses. Thus, it could conceivably sell the inventory to FCC or Capstone, the two main secured creditors in this case with whom it has connections, allowing them to in turn possibly make a profit on the inventory. This would be to the detriment of the general creditor body.

Moreover, Capstone, which apparently owns a majority interest in the Debtor's parent, is technically an insider of the Debtor.[1] Accordingly, the unfettered discretion of Great American to sell to Capstone, or any other insider of the Debtor (including the parent company), would in essence amount to a sale process that inures solely to the benefit of the secured creditors or insiders – to the ultimate detriment of other creditors in this case.

Accordingly, the United States Trustee requests that the Revised Proposed Order be amended to either (a) establish procedures through which a sale to FCC, Capstone, or any other Debtor's insider be through a public auction or other transparent public process which would ensure that full value is being provided in exchange or (b) to include the following ordered language:

> "ORDERED, that FCC, Capstone, any insider of the Debtor, or any of their respective subsidiaries or affiliates shall not purchase any of the inventory and attempt to resell same".

WHEREFORE, the United States Trustee respectfully requests that the Court sustain her objection, and, to the extent that the relief requested in the Sale and Retention Motion is granted, that the limitation as set forth in the proposed language above be imposed..

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

---

[1] The term "insider" is defined in section 101(31) as including, in the case of a corporation, a "person in control of the debtor." Moreover, the term also includes "affiliate, or insider of an affiliate as if such affiliate were the debtor".

Dated: New York, New York
December 10, 2009

                                  Respectfully submitted,
                                  DIANA G. ADAMS
                                  UNITED STATES TRUSTEE

By:   /s/ Elisabetta G. Gasparini
                                  Elisabetta G. Gasparini
                                  Trial Attorney
                                  33 Whitehall Street
                                  21st Floor
                                  New York, New York 10004-2112
                                  Tel. No. (212) 510-0500