| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | HEARING DATE: August 10, 2010<br>HEARING TIME: 10:00 a.m. |

---------------------------------------------------------x :
In re                                                    :
                                                         : Case No. 09-23634 (RDD)
PETER MATT & CO., INC.,                                  :
                                                         :
                                                         :
      Debtors.                                         :
                                                         :
---------------------------------------------------------x

## OBJECTION OF THE UNITED STATES TRUSTEE TO SECOND INTERIM AND FINAL APPLICATION OF ANDERSON KILL & OLICK, P.C. FOR ALLOWANCE OF FEES AND DISBURSEMENTS AS COUNSEL FOR THE DEBTOR PETER MATT & CO., INC.

**TO THE HONORABLE ROBERT D. DRAIN, BANKRUPTCY JUDGE:**

      Tracy Hope Davis, the Acting United States Trustee for Region 2 (the "United States Trustee"), has reviewed the second interim and final application (the "Application") of Anderson Kill & Olick, P.C. ("AKO") submitted in this case for the period from September 1, 2009 through and including March 26, 2010 seeking allowance of the following interim compensation and reimbursement of out of pocket expenses:

| Professional | Fees | Expenses | Hours |
|---|---|---|---|
| Anderson Kill & Olick, P.C., Counsel to the Debtor Docket Nos. 120 and 123 | $346,515.00 | $18,604.20 | 809.5 |

      The United States Trustee makes the following comments and objections to the Application.

## INTRODUCTION

      AKO seeks final allowance of fees totaling $346,515.00 and expenses totaling $18,604.02. To date, AKO has indicated that it has received $178,844.40 in fees and

$12,426.75 in expenses, leaving an unpaid balance of $167,670.60 in fees and $6,177.27 in expenses. The United States Trustee objects to the payment of fees to AKO in the amount of $66,914 for the reasons set forth below.

## **BACKGROUND**

### General Background

1. On September 1, 2009 (the "Petition Date"), the Debtor, which is a wholesaler/importer wine distributing and marketing company dedicated to building and promoting smaller wine brands, commenced this Chapter 11 case.

2. To date, the Debtor has continued in the possession of its property and management of its business as debtor-in-possession pursuant to Sections 1107 and 1008 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 case.

3. On September 28, 2009, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). See Docket No. 26. By order entered on November 3, 2009, the Committee retained the firm of Backenroth Frankel & Krunsky, LLP ("Backenroth") as its counsel. See Docket No. 44.[1]

4. By Order entered November 13, 2009, AKO was retained as counsel to the Debtors nunc pro tunc to the Petition Date. See Docket No. 49. Subsequently, by Order entered on June 30, 2010, AKO withdrew as Debtor's counsel effective March 26, 2010. See Docket No. 116. By Order dated June 21, 2010, Neiger LLP was retained to replace AKO as Debtor's counsel effective March 28, 2010. See Docket No. 115.

---

[1] To date, Committee's counsel has not served the United States Trustee with any monthly fee statements as set forth in Paragraph 5 below and has not filed any interim fee applications.

5.      On November 10, 2009, the Court entered an Order Pursuant to Sections 105(a) and 331 Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals (the "Monthly Compensation Order").  See  Docket No. 47.  According to the Monthly Compensation Order, retained professionals in these cases may be paid 80% of their fees and 100% of their expenses on a monthly basis upon presentation of a monthly fee statement.  Id.

Cash Collateral Usage and Plan and Disclosure Statement

7.      First Capital Corp., LLC ("FCC") and the Debtor entered into a Pre-Petition Loan and Security Agreement on or about August 25, 2008, pursuant to which the Debtor was able to borrow a percentage of the value of inventory.

8.      On September 10, 2009, the Debtor filed a motion for entry of interim and final orders seeking the Court's authorization to obtain post-petition secured superpriority financing from FCC (the "DIP Financing Motion").  See Docket No. 12.  After filing the DIP Financing Motion, the Office of the United States Trustee provided Debtor's counsel and FCC's counsel  comments to the DIP Financing Motion during a telephone conference at which counsel for both the Debtor and FCC were present.  Among other things, the Office of the United States Trustee expressed concern that the amount of the carve-out provided for professionals (including the Creditors' Committee which had yet to be formed) in the amount of $40,000, as disclosed in the proposed order filed with the DIP Financing Motion, was too low.

9.      Later in the evening of September 10, 2010, the Debtor reversed course, notified the Court that it was withdrawing the DIP Financing Motion, and instead filed an emergency motion for the non-consensual use of cash collateral.  See Letter of Todd E. Duffy dated September 10, 2009, attached hereto as Exhibit A ("Letter of September 10, 2009").  As apparent from the Letter of

September 10, 2009, one of the principal reasons for the change of heart – after all other substantive terms of the proposed DIP financing had been agreed to– was the insistence by AKO that the proposed DIP Financing provide for a $400,000 professional fee carve-out that apparently FCC considered to be excessive for this case.

10. Accordingly, immediately after the DIP Financing Motion was withdraw, the Debtor filed a motion pursuant to 11 U.S.C. §361(2) and 363(c)(2), Federal Rule of Bankruptcy Procedure 4001, and Local Bankruptcy Rule 4001-2 seeking the Court's approval to use FCC's cash collateral (the "Cash Collateral Motion"). See Docket No. 14. The Court held an initial hearing on the Cash Collateral Motion on September 11, 2009, at which time FCC consented to the Debtor's use of a limited amount of cash collateral to pay its payroll obligations and September 2009 rent.

11. On September 16, 2009, FCC filed its objection to the Cash Collateral Motion and a cross-motion to lift the automatic stay (the "FCC's Objection"). On September 18, 2009, the Court held a second hearing on the Cash Collateral Motion. During that hearing, FCC agreed to the Debtors' additional use of cash collateral through October 1, 2009. The Court entered an interim cash collateral order on September 23, 2009 and scheduled the final hearing on the Cash Collateral Motion for October 1, 2009. See Docket No. 20. The final hearing on the Cash Collateral Motion was subsequently adjourned to October 9, 2009 while the parties attempted to negotiate a consensual final order.

12. On October 7, 2009, the Court entered a stipulated order extending the use of cash collateral. See Docket No. 31. Shortly thereafter, the Debtor entered into a settlement agreement (the "Settlement Agreement") with FCC and Capstone Business Credit LLC and agreed to a budget (the "Budget") allowing the use of cash collateral through February 2010. On October 15, 2009, the

Court entered the Final Cash Collateral Order, to which was attached a copy of the Budget. See Docket No. 37. By its own terms, the use of cash collateral was set to expire on March 5, 2010. Id.

13. The Settlement Agreement and the Final Cash Collateral Order contemplated that the Debtor would conduct an orderly liquidation of its inventory that would end in March 2010. Through the liquidation process, the Debtor would utilize the proceeds of the sales and collect the outstanding receivables to continue to fund its operations and administrative expenses, and would provide weekly payments to FCC on its secured debt. Ultimately, the liquidation process would provide for a little over $500,000 to general unsecured creditors. See Final Cash Collateral Order; see also Motion for an Order Authorizing the Debtor to (i) Sell Inventory, Free and Clear of All Liens, Claims and Encumbrances; and (ii) Retain Great American Group, LLC) As Liquidation Consultant to the Debtor, *Nunc Pro Tunc* to November 20, 2009, Docket No. 52, at ¶11; Application at ¶27.

14. On or about October 19, 2010, Debtor's counsel circulated a preliminary draft of a disclosure statement and plan (the "Draft Plan and Disclosure Statement") – prior to a bar date even being established in this case. The Draft Plan and Disclosure Statement contemplated that FCC would be paid in full with interest on its secured claim. The Debtor's junior secured creditors, Capstone, would receive equity in the Debtor as consideration for its secured claim but would carve-out a payment for an administrative expense of Starry Night Winery, a creditor in the case, and $504,000 from which holders of Allowed General Unsecured Claims against the Debtor would receive their *pro rata* distribution from the cash remaining after the completion of the liquidation of the Debtor's assets. See Application at ¶32.

15. To date, no plan and disclosure statement have been filed with the Court. In the Application, Debtor's counsel indicated that after drafting the Draft Disclosure Statement and Plan,

5

the Debtor requested that AKO delay filing the documents to "allow the Debtor an opportunity to liquidate its inventory at a less hectic pace than that to which it would have been bound under the Plan." See Application at ¶35.

16. On November 23, 2009, the Debtor filed a motion seeking the authorization for the Debtor to sell inventory and retain Great American Group, LLC as liquidation consultant to help with such sale (the "Great American Motion"). See Docket No. 52. The Great American Motion was approved on February 8, 2010. See Docket No. 70. Upon information and belief, Great American Group, LLC did not end up liquidating as many – if any at all – assets as originally contemplated. As indicated in a Declaration fo Joern Tittle, the Debtor's CEO, most of the liquidation of the Debtor's assets was orchestrated by him personally. See Unsowrn Declaration Pursuant to 28 U.S.C. §1746 of Joern Tittel In Support of Objection to Motion to Convert Case to Chapter 7 Liquidation. See Docket No. 96.

17. On March 18, 2010, FCC submitted to the Court a revised budget and cash flow analysis for the period starting the week of March 8, 2010 through the first week of May 2010 (the "Revised Budget"). See Docket No. 76. The Revised Budget reflects that, contrary to what was previously agreed with and promised to the Creditors' Committee, the liquidation process will continue for at least an additional three months, will leave an outstanding balance owed to FCC of approximately $450,000, and will leave no funds for distribution to unsecured creditors. Counsel to the Debtor and the Committee responded to the March 18 letter, indicating that the Revised Budget was not acceptable to them.

18. On March 25, 2010, the United States Trustee filed a motion seeking the conversion of this Chapter 11 case to Chapter 7 or, in the alternative, the dismissal of the case (the "Motion to

Convert"). See Docket No. 84. FCC and the Debtor filed objections to the Motion to Convert. See Docket Nos. 94 and 96.

19. On April 20, 2010, the Court entered an Order denying the Motion to Convert. See Docket No. 103.

20. On July 6, 2010, the Debtor filed a motion seeking the voluntary dismissal of the case, citing as grounds for such dismissal the fact that the Debtor is unable to effectuate a feasible plan pursuant to 11 U.S.C. §1129(a)(11) (the "Motion to Dismiss"). See Docket No. 117. The Motion to Dismiss is scheduled to be heard on the same date as the Application.

Prior Monthly Fee Statements

21. In the Application, AKO seeks total fees in the amount of $346,515.00 and expenses in the amount of $18,604.02. AKO, however, states that to date it has only received $178,844.40 in fees and $12,426.75 in expenses in connection with its representation of the Debtor. See Application at ¶18.

22. On or about March 5, 2010, AKO filed its First Interim Application for allowance of fees and disbursements, which application covered the period from the Petition Date through December 31, 2009 (the "First Interim Application"). See Docket No. 74. The fees sought in the First Interim Application were in the amount of $285,116.50 and the expenses sought were in the amount of $12,426.75. The United States Trustee and FCC filed objections to the First Interim Application. See Docket Nos. 78 and 82.

23. On or about April 23, 2010, the Court entered an order regarding the First Interim Application (the "First Interim Application Order"). See Docket No. 108. The First Interim

Application Order provided that (a) AKO had agreed to waive $10,000 of its fees[2] and to a holdback of $20,705.60 and (b) authorized AKO to receive only the sum of $204,410.90 in fees and $12,462.75 in expenses, with $50,000 in requested fees neither being approved nor disapproved at that time. Id.

Monthly Operating Reports and UST Fees

24.   The Debtor last filed an operating report for the month of April 2010 but has failed to file reports for the months of May and June 2010.

25.   The Debtor presently owes $10,391.35 in United States Trustee fees for the second quarter of 2010. Given the Debtor's failure to file timely monthly operating reports as required under the UST Chapter 11 Guidelines, the outstanding amounts of UST fees are purely estimates as the amounts of disbursements for the months of May and June 2010 are unknown.

**OBJECTION**

**I.     GENERAL STANDARDS**

Section 330 of the Bankruptcy Code provides that:

After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103-

>  (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
>  (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

Section 330 focuses on reasonableness and benefit to the estate of the professionals' services. In re Lederman Enter., Inc., 997 F.2d 1321, 1323 (10th Cir. 1993). Accordingly, an application for

---

[2] The Application, however, does not reflect the $10,000 reduction agreed to by AKO.

compensation and reimbursement of expenses must demonstrate that the professional's services were necessary and made a beneficial contribution to the estate or its creditors. In re Engel, 124 F.3d 567, 573 (3d Cir. 1997).

Under section 330, the bankruptcy court has the authority to reduce fees or expenses requested when they are disproportionate to the benefit to the estate, even if it has already approved the professional's retention under sections 327 and 328 of the Bankruptcy Code. In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); see Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 262 (3d Cir. 1995) (affirming lower courts' denial of improperly documented and inadequately detailed expenses). Moreover, services of a poor quality which are the consequence of wrongful or unethical conduct may result in denial of any fee or an order for return of any fee paid. Red Carpet Corp. v. Miller, 708 F.2d 1576 (11th Cir. 1983).

Under Section 330(a)(1)(B) of the Bankruptcy Code, only documented expenses that are actual and necessary are reimbursable. 11 U.S.C. § 330(a)(1)(B). Professionals must "furnish enough specificity for the Court to establish whether a given expense was both actual and necessary." In re Korea Chosun Daily Times, 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (quoting In re S.T.N. Enters., Inc., 70 B.R. 823, 834 (Bankr. D. Vt. 1987)); see also In re Fibermark, Inc., 349 B.R. 385, 395 (Bankr. D. Vt. 2006) (in order to be compensated from the estate, the professional must demonstrate, "not just recite – that . . . the expenses sought to be reimbursed are actual and necessary and that no other reasonable, less expensive alternatives were available."). Expenses are "actual" if they are incurred and not based on a formula or pro rata calculation. Id. at 400. Moreover, they are "necessary" if they were "reasonably needed to accomplish proper representation of the client."

9

Korea Chosun, 337 B.R. at 769 (quoting In re Pacific Express, Inc., 56 B.R. 859, 865 (Bankr. E.D. Cal. 1985)).

Each applicant bears the burden of proof in all fee matters. In re Northwest Airlines Corp., 400 B.R. 393, 398 (Bankr. S.D.N.Y. 2009) (citing In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997)); In re JLM, Inc., 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997). The burden of proof to show entitlement to fees should "not be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors." Northwest, 400 B.R. at 398 (quoting In re Pettibone Corp., 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987)). The failure of an applicant to sustain the burden of proof as to the reasonableness of the compensation may result in the denial of the request for compensation. In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988).

The Court has an independent burden to review fee applications "lest overreaching … professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors." Keene Corp., 205 B.R. at 695 (quoting In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994)); see also In re D'Amico, 2009 WL 2982987, at *2 (Bankr. N.D.N.Y. 2009) (citing In re Brown, 371 B.R. 486, 499 (N.D. Okla. 2007)) ("[The] court has an independent duty to review all requests for fees even if not party in interest objects."). Further, the Bankruptcy Court has the authority to reduce fees or expenses when they are disproportionate to the benefit to the estate, even if it already has approved the professional's retention under Sections 327 and 328 of the Bankruptcy Code. In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); see also, Zolfo, 50 F.3d at 262-63 (affirming lower courts' denial of improperly documented and inadequately detailed expenses).

## II. DISCUSSION

The United States Trustee objects to the allowance of fees sought in the Application in the total amount of $66,914.00. This Chapter 11 case has been pending for approximately 11 months and despite the original promise of a "pot of funds" for distribution to general unsecured creditors in the amount of $504,000 and subsequent promises that the Debtor would be able to propose a confirmable liquidation plan, the Debtor has finally admitted that it is unable to propose a feasible plan and now is seeking to have the case dismissed.

Despite the undisputed fact that the Debtor is administratively insolvent and despite the fact that it is questionable if other professionals in the case will recover anywhere close to the full amount of their fees and expenses – if any at all – AKO is now requesting compensation and expenses in the amount of $178,844.40 and $12,426.75, respectively, bringing the total that the firm requests, including the amounts previously received, to $346,515.00 and $18,604.02. AKO's Application appears to include in its request (a) $10,000 that they previously agreed to waive in connection with the First Interim Application and (b) $23,234.00 for fees incurred in March 2010 which AKO had previously agreed not to seek. See Docket No. 112, Exhibit B ("Primarily, AKO does not expect to receive payment for any fees in connections with the March Fee Statement because the budget does not provide for any such payments.")

The United States Trustee objects to $66,914.00 in fees that AKO seeks because services related to such fees did not provide any benefit to the estate and are related to AKO's defending objections filed with respect to their own fee and disbursement requests.

### A. No Benefit to the Estate

Bankruptcy professionals should be compensated "commensurate with their expertise and *the benefit their efforts yield to the estate*." In re Fibermark, Inc., 349 B.R. 385, 396 (Bankr. D. Vt. 2006) (emphasis added).

The United States Trustee, therefore, objects to any compensation to AKO for services related to (a) preparation and work related to the DIP Financing Motion and (b) the preparation of a draft of the plan and disclosure statement. With respect to the DIP Financing Motion, the time entries annexed to the Application indicate that AKO's professionals expended approximately 57 hours aggregating to $26,511 for drafting and negotiating the motion seeking debtor-in-possession financing and all related documents. As set forth above, the Debtor filed the DIP Financing Motion on September 10, 2010 and attached to it a proposed order which included a professional carve-out of $40,000. Subsequent to a call with the Office of the United States Trustee during which this Office expressed concerns about the low amount of the professional carve-out in light of the fact that the United States Trustee was in the process of soliciting creditors for the formation of a creditors' committee, AKO realized – despite having negotiated the DIP financing with FCC for days and attaching the proposed order which appeared to be consensual – that the carve-out was only $40,000 and not $400,000 as it had originally thought. Accordingly, in a surprising turn of events and blaming FCC for the change to the terms of the carve-out, AKO withdrew the DIP Financing Motion and, instead, filed the Cash Collateral Motion which was eventually contested by FCC and ended up costing the estate for the additional fees related to defending it. Because AKO's services related to the DIP Financing Motion do not appear to have provided the Debtor's estate any benefit, the United States Trustee objects to any compensation to AKO in the amount of $26,511.

The United States Trustee also objects to any compensation to AKO related to the preparation and drafting of the Draft Plan and Disclosure Statement. In the Application, AKO seeks compensation for 66 hours spent drafting such documents, aggregating $24,853 in amount. The Draft Plan and Disclosure Statement were prematurely drafted less than two months after the case filed, when the Debtor had just entered into a consensual budget with FCC consenting to the liquidation of the Debtor's assets, but at a time when there was no bar date set, the Debtor had not determined the steps it would take to liquidate its assets, and the Debtor could not have known the extent of the administrative claims. The Draft Plan and Disclosure Statement were never filed, indeed, no plan or disclosure statement was ever filed in the case. Accordingly, the many hours that AKO spent in drafting the Draft Plan and Disclosure Statement appear to have been unnecessary and did not provide any benefit to the Debtor's estate. See In re Ahead Comm. Systems, 295 B.R. 512, 520 (D. Conn. 2008) (remanding case to bankruptcy court for redetermination of award of fees to counsel that prepared a proposed Chapter 11 plan which was patently defective); see also In re Lederman Enters., Inc., 997 F.2d 1321, 1323-24 (10th Cir. 1993) (holding that attorney's services in attempting to obtain confirmation for debtor's proposed Chapter 11 plan conferred no benefit on estate and were not "necessary" services for which compensation could be awarded). Accordingly, the United States Trustee requests that AKO's fees in the amount of $24,853 incurred in the preparation of the Draft Plan and Disclosure Statement be denied.

### B. Time Spent Defending Fee Applications

In the Application, AKO seeks fees related to the firm's defense of its own monthly fee statements as well as the First Interim Application in the following amounts: (a) approximately

13

$7,418.50 for the period covered by the First Interim Application and (b) $8,140.50 for the period from January 2010 to March 2010.

While the reasonable cost of preparing a fee application is compensable under the Bankruptcy Code, there is no express provision that allows the cost of defending it, and courts in this District and elsewhere have disallowed fees for defending objections to fee requests in many instances.  See, In re Brous, 370 B.R. 563 (Bankr. S.D.N.Y. 2007) (noting that "[t]here is no parallel statutory requirement to defend against an objection to a fee application, or to receive compensation for the legal fees incurred in that defense" and concluding that fees related to fee application defense should be disallowed where a good faith objection to such fees had been asserted and sustained); In re Fibermark, 349 B.R. 385 (Bankr. D. Vt. 2006) (noting that time spent defending professional fee application that does not conform to the guidelines set forth in the Bankruptcy Code, the Bankruptcy Rules, or pertinent case law is not compensable); In re New Boston Coke Corp., 299 B.R. 432, 442-443 (Bankr. E.D. Mich. 2003) (disallowing over 70 hours billed to defending fee application and noting that the "allowance of fees for defending a fee application would encourage the presentation of excessive fees because either the attorney would be granted those excess fees or the attorney could recover the costs of unsuccessfully litigation and defending such request."); see also In re St. Rita's Assoc.'s Private Placement, L.P., 260 B.R 650 (Bankr. W.D.N.Y. 2001).  Accordingly, the United States Trustee objects to the award of AKO's fees in the total amount of approximately $15,550.

WHEREFORE, the United States Trustee respectfully requests that the Court sustain her objection, disallow the fees sought by AKO in the amounts specified above, and grant such other relief as is just.

Dated:		New York, New York

August __, 2010

        Respectfully submitted,
        TRACY HOPE DAVIS
        ACTING UNITED STATES TRUSTEE

By:   /s/ *Elisabetta G. Gasparini*
       Elisabetta G. Gasparini
       Trial Attorney
       33 Whitehall Street, 21st Floor
       New York, New York 10004
       Tel. No. (212) 510-0500